UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHAD R.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:24-CV-06567 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Chad R. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 5) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on April 20, 2022. (Dkt. 3 at 82).[1] In his application, Plaintiff alleged disability beginning September 29, 2020, due to back injury, severe spinal stenosis, bone spurs, rheumatoid arthritis, ruptured discs, nerve damage, "pain in 14 and 15," and disc migration. (*Id.* at 70-71). Plaintiff's application was initially denied on September 1, 2022. (*Id.* at 90-95). A telephone hearing was held before administrative law judge ("ALJ") Jennifer Smith on September 26, 2023. (*Id.* at 41-69). On December 26, 2023, the ALJ issued an unfavorable decision. (*Id.* at 18-36). Plaintiff requested Appeals Council review; his request was denied on August 2, 2024, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2025. (Dkt. 3 at 23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 29, 2020, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of status post left L3-L4, L4-L5 laminectomy and discectomy, and obesity. (*Id.* at 24). The ALJ further found that Plaintiff's medically determinable impairments of hypertension and diabetes mellitus were non-severe. (*Id.*). As to Plaintiff's complaints of cognitive effects of physical symptoms, rheumatoid arthritis, and medication side-effects, the ALJ determined that these were not medically determinable impairments. (*Id.* at 24-25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 25). The ALJ particularly considered the criteria of Listings 1.00, 1.15, 1.18, 11.00, and 14.00 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(c), with the following additional limits and restrictions:

> should not work at unprotected heights; should not climb ladders, ropes, or scaffolds; should not work in close proximity to dangerous machinery or moving mechanical parts of equipment; should not balance as defined in the *Selected Characteristics of Occupations* (SCO); should not kneel, crouch,

> and crawl; can occasionally, but not repetitively climb ramps, climb stairs, and stoop; can change position and walk around during ordinary breaks and lunch hour; and should be able stand for two minutes at 30-minute intervals, but can stay on task at the workstation during the position change.

(*Id.* at 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 34).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, order clerk, and charge account clerk. (*Id.* at 35). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from September 29, 2020, through the decision date. (*Id.* at 36).

## II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error.**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly reconcile limitations from the medical opinion evidence with the RFC finding, and (2) the ALJ erred by failing to consider an alternative onset date of disability, or separate periods to adequately reflect Plaintiff's worsening condition. (Dkt. 5-1 at 1, 13-22). In response, the Commissioner argues that substantial evidence supports the RFC finding, the ALJ thoroughly explained her rationale for not certain limitations in the RFC, and also that it was Plaintiff's burden to show that he became disabled at any point during the relevant period, and he failed to do so. (Dkt. 9-1 at 2-3, 6-16). The Court

has considered Plaintiff's arguments and, for the reasons discussed below, finds them to be without merit.

**A. The RFC Finding**

Plaintiff's first argument is that the ALJ failed to properly reconcile limitations from the medical opinion evidence with the RFC finding. Specifically, Plaintiff argues that the ALJ failed to explain why reaching and twisting limitations were not included in the RFC finding, and the ALJ improperly rejected the opinion of Harbinder Toor, M.D., regarding Plaintiff's medical need for a cane for standing and walking. (*See* Dkt. 5-1 at 15-20).

In response, the Commissioner argues that the ALJ explained why she did not incorporate limitations for reaching and twisting in the RFC, and those conclusions are supported by substantial evidence. With respect to Plaintiff's use of a cane, the Commissioner argues that the ALJ's finding in this respect was also supported by substantial evidence, including because other than the opinion offered by Dr. Toor, the evidence in the record does not support the use of a cane. (Dkt. 9-1 at 6-15).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a

claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

With respect to the evaluation of opinion evidence in the record, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2)

consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c). When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at § 404.1520c(b). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id*. at § 404.1520c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

With respect to the ALJ's formulation of the RFC, Plaintiff first raises an issue with the lack of any reaching limitation. Plaintiff points specifically to a limitation assessed by Scott J. Pugliese, PT, that Plaintiff should perform no more than occasional reaching or elevated activity. (Dkt. 5-1 at 15). Mr. Pugliese examined Plaintiff on February 2, 2022. (Dkt. 3 at 996-98). He opined that Plaintiff had the ability to perform "light work" with additional restrictions, including only performing reaching or elevated activity more than occasionally. (*Id*. at 998). Mr. Pugliese further opined that Plaintiff could perform work at a "sedentary" level, and he would need the additional restriction of being able to change from a sitting position at least every 30 minutes. (*Id*.). Given the ALJ ultimately determined that Plaintiff could not perform work at the "light" level—rather, he assessed that Plaintiff could perform only "sedentary work" with restrictions—Plaintiff's argument

with respect to the reaching limitation assessed by Mr. Pugliese in the context of light work is misplaced.

Further, it is apparent from the written determination that the ALJ specifically considered whether a reaching limitation was necessary, but concluded that other evidence in the record, including medical opinion evidence offered by Kevin Scott, M.D. and Dr. Toor, indicated that no such limitation was required. (*See* Dkt. 3 at 30 ("It is otherwise noted that Dr. Scott did not identify any significant limits in sitting, reaching, or using the upper extremities that are generally consistent with the medical consultants' opinions and reflected in the residual functional capacity."); *id*. at 31 ("Additionally, Dr. Toor did not identify any other limitations or restriction, including in twisting, reaching, and using the upper extremities that is also reflected in the residual functional capacity."); *see also id*. at 26 (at step three of the sequential analysis, explaining that "[a]s discussed more fully below, the Administrative Law Judge fully considered the impairments of the upper extremities in evaluating the listings, including the Functional Criteria, but the claimant retains the ability to use his upper extremities to lift and carry objects up to ten pounds and does not have inability to use his upper extremities to initiate, sustain, and complete work-related activities involving fine and gross movements. Instead, the claimant has unlimited ability to reach, handle, finger, and feel with his upper extremities, as outlined more fully below.")). Accordingly, it is clear to the Court why the RFC for sedentary work does not

include any further restrictions on Plaintiff's ability to reach, and Plaintiff has failed to identify any evidence supporting a more restrictive RFC.

Plaintiff next takes issue with the RFC's lack of a twisting limitation, arguing that the ALJ failed to adequately explain why any such limitation was not included in the RFC. (Dkt. 5-1 at 16). In support of this argument, Plaintiff points to an opinion offered by Dr. Scott, on December 17, 2020, that Plaintiff could return to a sedentary job with no twisting, and also to assessments by Peter Capicotto, M.D., that Plaintiff should avoid repetitive bending and twisting following his back surgery. (*Id.*).

As explained in the written determination, the ALJ found Dr. Scott's opinion to be persuasive, but did not credit the assessed limitation for twisting, including because it was assessed in December 2020, prior to Plaintiff's surgery, and also because the need for any such limitation was not reflected in Plaintiff's reported activities of daily living requiring good range of motion, including cooking, cleaning, doing laundry, and shopping. (*See* Dkt. 3 at 30). Similarly, with respect to the opinion offered by Dr. Capicotto, which the ALJ found to be partially persuasive, the ALJ noted that Dr. Capicotto treated Plaintiff pre-and post-operatively, and therefore the findings of pre- and post-operative limitations "were made closest in time to the claimant's initial work-related injury and surgery such that they do not represent the claimant's maximum functioning following a brief recuperative period." (*Id.* at 32). The ALJ further noted that any limits in twisting were not supported by Plaintiff's various activities of daily living requiring good range of motion. (*Id.* at 33). Further, with respect to the ability to twist, the ALJ further noted that Dr. Toor assessed no such limitation (*see id.* at 31), and therefore it was not consistent with other opinion

evidence in the record. Consistent with the regulations, it is plain that the ALJ addressed the opinions offered by Dr. Scott and Dr. Capicotto, and explained why she found their opinions to be supported by the record or consistent with other evidence. *See, e.g., Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 17 (S.D.N.Y. 2022) (ALJ must explain supportability and consistency factors).

Finally, even if the ALJ had failed to explain in the written determination why the RFC did not include a limitation for twisting, Plaintiff's argument is misplaced, since sedentary work—which the ALJ assessed in this case—does not require twisting. *See, e.g., Johnson v. Astrue*, No. 07-CV-647, 2009 WL 1650415, at *4 (W.D.N.Y. June 12, 2009) (explaining that doctor's opinion that the plaintiff had moderate limitations to heavy lifting, twisting, and prolonged standing, "would not preclude Plaintiff from performing the requirements of sedentary work, as sedentary work does not require heavy lifting, twisting, or prolonged standing"); *see also Funk v. Astrue*, No. 1:10-CV-602 (MAD), 2012 WL 501017, at *3 (N.D.N.Y. Feb. 15, 2012) ("Restrictions in prolonged standing do not preclude plaintiff from performing the requirements of sedentary work, as sedentary work does not require heavy lifting, twisting, or prolonged standing."). Accordingly, it is clear to the Court why the ALJ declined to include a limitation for twisting in the RFC.

Plaintiff lastly takes issue with the assessed RFC because the ALJ relied on her lay opinion to reject Dr. Toor's assessment that Plaintiff's use of a cane was medically necessary. (Dkt. 5-1 at 18). Dr. Toor examined Plaintiff on October 17, 2023. (Dkt. 3 at 999-1001). As part of his examination, Dr. Toor noted that Plaintiff was "using a cane prescribed by the physician." (*Id*. at 1000). Dr. Toor noted, as part of his description of

Plaintiff's "general appearance, gait, and station," that Plaintiff could not stand for more than a few minutes without a cane, and that he "needs the cane medically for standing and walking." (*Id.*). Dr. Toor opined that Plaintiff had moderate-to-marked limitations for lifting and carrying, standing and walking for a long time, climbing stairs, ramps, ladders, and scaffolds, for stooping and kneeling, and for operating motor vehicles; moderate limitations for sitting for a long time; and that Plaintiff also had difficulty with balance and walking up stairs. (*Id.* at 1001).

The ALJ discussed Dr. Toor's opinion in the written determination, concluding the opinion was generally persuasive, but not adopted in full. (*Id.* at 31). With respect to Dr. Toor's statement that the cane was medically necessary, the ALJ explained that such a limitation was not supported by the record, "including notations of walking up to four miles a day after surgery without any indication of significant worsening of the claimant's physical condition to account for the use of an assistive device" (*id.*; *see also id.* at 28, 29 (discussing that, at times, Plaintiff reported his pain was better with standing and he was able to walk up to four miles per day)), nor was it consistent with other medical opinions in the record (*see id.* at 25 (noting that although Plaintiff reported that his physician prescribed the cane, and a consultative examiner indicated that the cane was medically necessary for standing and walking, "there is no other opinion from a medical source describing the circumstances when an assistive device is required in a work setting")).

Plaintiff argues that the ALJ's reasoning fails to address Plaintiff's worsening condition following his surgery. (Dkt. 5-1 at 18). But the written determination reflects that the ALJ considered Plaintiff's need for a cane to ambulate throughout the entire

relevant period. (Dkt. 3 at 28 ("In this case, there is no twelve-month period since the alleged onset date of disability when the claimant's back disorder caused greater limitations of functioning based on his overall response to surgery and post-operative treatment.")). For example, the ALJ noted that on multiple occasions through February 2023—well after Plaintiff's surgery in 2021—"the claimant denied using an assistive device," and "[v]arious exams show no use of an assistive device, except for a back brace." (Dkt. 3 at 25; *see also id*. at 228, 253 (in May 2022 and February 2023, Plaintiff noting his use of a back brace and a donut pillow for sitting, but with no mention of a cane); *id*. at 984-85 (treatment note from March 2023, noting that Plaintiff "ambulates without assistive device")). The ALJ identified specific evidence in the record supporting that a cane was not medically necessary, noting that "[t]here is no ongoing worsening of symptoms, signs, or medical findings to support the documented medical need for an assistive device." (*Id*. at 25). Although Plaintiff argues that the ALJ relied on her lay opinion in determining that Plaintiff did not require a cane to engage in work-related activity, the written determination reveals that is not the case; rather, the ALJ relied on positive findings on post-operative studies, Plaintiff's extensive physical therapy records, and Plaintiff's testimony from the administrative hearing. (*See id*. at 28). The ALJ's consideration of other evidence in the record to inform her assessment of Plaintiff's need for a cane was proper. *See, e.g., Michael C. v. Comm'r of Soc. Sec.*, No. 1:21-CV-746 (ATB), 2022 WL 21852888, at *12 (N.D.N.Y. Aug. 24, 2022) ("There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would

require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter.") (citations omitted).

Finally, as noted above, the ALJ assessed an RFC for sedentary work with additional restrictions, and an RFC for sedentary work is not necessarily inconsistent with a claimant's need for a cane. *See, e.g., Amy S. v. Bisignano*, No. 24-CV-6075LGF, 2026 WL 538168, at *7 (W.D.N.Y. Feb. 26, 2026) ("Relevantly, courts within the Western District of New York have found that the use of an assistive device, including a cane or walker, for aid in ambulation is not inconsistent with an RFC for sedentary work." (quotations and citations omitted) (collecting cases)); *Stover v. Saul*, No. 18-CV-00404-MJR, 2020 WL 897411, at *5 (W.D.N.Y. Feb. 25, 2020) ("the use of a cane or walker to aid in ambulation is not inconsistent with an RFC of sedentary work").

In sum, Plaintiff has failed to show that the ALJ erred by not adopting Dr. Toor's statement that Plaintiff's use of a cane was medically necessary, nor has Plaintiff demonstrated that he requires any greater limitations than those assessed in the sedentary RFC. Accordingly, remand is not required on this basis.

**B. Alternative Onset Date of Disability**

Plaintiff's last and final argument is that the ALJ erred by failing to consider an alternative onset date of disability, or separate periods to adequately reflect his worsening condition. (Dkt. 5-1 at 20). Specifically, Plaintiff alleges that the ALJ should have considered whether he became disabled after September 29, 2020, the date of his injury, because although Plaintiff demonstrated some progress post-surgery, by May 2022, Plaintiff was consistently complaining of significant pain, imaging showed worsening

changes in Plaintiff's back, and by the time he was examined by Dr. Toor in October 2023, Plaintiff required a cane for short periods of standing and walking. (*Id*. at 21). In response, the Commissioner contends that the ALJ considered a similar argument made by Plaintiff in his pre-hearing brief, and reasonably found it was not well-supported. (Dkt. 9-1 at 15).

"A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status." *Pettaway v. Colvin*, 12-CV-2914 (NGG), 2014 WL 2526617 at *13 (E.D.N.Y. June 4, 2014) (quotation omitted). When deciding a disability claim, "if a claimant is disabled at any point in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of his claim." *Williams v. Colvin*, No. 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016). "It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event, such as surgery." *Robertson v. Berryhill*, No. 6:16-CV-06481 (MAT), 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017).

Here, other than to state that the ALJ should have considered an alternative period of disability sometime after March 2021, Plaintiff does not provide a specific alterative period of disability the ALJ should have considered. It is Plaintiff's burden to prove that he was disabled at any point during the relevant period, *see Rosa*, 168 F.3d at 77, and he has failed to do so. As explained above, the record reflects that the ALJ considered

Plaintiff's impairments—such as his ability to ambulate—through the entire relevant period, but found that evidence in the record supported Plaintiff's ability to perform sedentary work with additional restrictions, even through 2022 and 2023.

Further, the written determination indicates that the ALJ considered an alternative period of disability but found that Plaintiff had failed to establish one. (*See, e.g.*, Dkt. 3 at 28 ("In this case, there is no twelve-month period since the alleged onset date of disability when the claimant's back disorder caused greater limitations of functioning based on his overall response to surgery and post-operative treatment); *id.* ("[T]he claimant's allegations that he is no better since his initial surgery and has instead regressed . . . are not well-supported by other evidence."); *id.* ("There is no indication that the claimant suffered a significant complication of his initial surgery, such as with a chronic infection. Surgical incisions are described as well-healed."); *id.* at 29 ("Similarly, there is no twelve-month period when the claimant's obesity results in greater limitations of functioning."); *id.* ("There are also periods when the claimant was engaging in activities that require greater physical demands, such as walking up to four miles per day.")).

Plaintiff's arguments that in May 2022, he was complaining of pain, additional surgeries were being discussed, his imaging showed continued and worsening changes to his back, and Dr. Toor opined he required a cane in October 2023 (*see* Dkt. 5-1 at 21), amount to no more than a request that the Court re-weigh the medical evidence, which would not be proper. It is not the function of this Court to re-weigh evidence or consider *de novo* whether Plaintiff is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine

*de novo* whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."). The Court finds that the ALJ's determination is supported by substantial evidence, and therefore remand is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2026
Rochester, New York